# UNITED STATES DISTRICT COURT

### EASTERN   DISTRICT OF   CALIFORNIA

**ORIGINAL FILED**

MAR 2 3 2005

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA

v.

Adrian Damian Baldovinos,
DOB: 03-12-1972,

~02   Alejandro Ortiz-Salas,
DOB: 12-12-1977

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER:

MAG- · 05 - 0 8 4 KJM -02
(M-14-2367-M)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about **August 2004 through February 2005** in Sacramento County, in the Eastern District of California defendant(s) did, (Track Statutory Language of Offense)

‣   **Conspire to distribute and possess with intent to distribute methamphetamine**

in violation of Title **21**, United States Code, Section(s) **846 & 841(a)(1)**.  I further state that I am a(n) DEA Special Agent and that this complaint is based on the following facts:

‣   **See attached affidavit of SA Katie Dorais**

X   Continued on the attached sheet and made a part hereof.

_____
Signature of Complainant Katie Dorais
DEA Special Agent

Sworn to before me, and subscribed in my presence
KIMBERLY J. MUELLER          3/23/05          at   Sacramento, CA

Date

KIMBERLY J. MUELLER
United States Magistrate Judge
Name and Title of Judicial Officer

AUSA MARY L. GRAD (916) 554-2763

City and State

_____
Signature of Judicial Officer

I hereby certify that the annexed
instrument is a true and correct copy of
the original on file in my office.
ATTEST:   JACK L. WAGNER

Clerk, U.S. District Court,
Eastern District of California

By _____  Deputy Clerk

Dated   MAR 2 3 2005

**A F F I D A V I T**

1    I, Katie A. Dorais, being duly sworn, depose and state as
2  follows:

3    I am a Special Agent with the United States Drug Enforcement
4  Administration (DEA) and have so been employed for approximately
5  one year and 10 months.  I was trained as a DEA Special Agent at
6  the DEA/FBI Academy, Quantico, Virginia.   During my training, I
7  received special training in the Controlled Substance Act, Title
8  21 United States Code, including but not limited to Sections
9  841(a)(1) and 846, Controlled Substance Violations and Conspiracy
10  to Commit Controlled Substance Violations, respectively.  I have
11  received special training regarding criminal organizations
12  engaged in conspiracies to manufacture and/or possess with intent
13  to distribute methamphetamine, cocaine, cocaine base, heroin,
14  marijuana and other dangerous drugs prohibited by law.   I
15  received further training in search and seizure law and many
16  other facets of drug law enforcement.

17    During the course of my employment as a DEA Special Agent, I
18  have participated in numerous criminal investigations.  I have
19  participated in numerous Federal and State search warrants
20  involving the aforementioned listed controlled substances, the
21  seizure of narcotics related records and other types of evidence
22  that document the activities of criminal organizations in both
23  the manufacturing and distribution of controlled substances.  To
24  successfully conduct these investigations, I have utilized a
25  variety of investigative techniques and resources, including
26  physical and electronic surveillance and various types of
27  infiltration, including undercover agents, informants and

1

1 | cooperating sources.  Through these investigations, my training

2 | and experience, and conversations with other experienced agents

3 | and law enforcement personnel, I have become familiar with the

4 | methods used by traffickers to smuggle and safeguard narcotics,

5 | to distribute narcotics, and to collect and launder related

6 | proceeds.

7 |     The information contained in this affidavit is based upon my

8 | personal observations, observations of other law enforcement

9 | officers, my review of official police and government reports,

10 | and consultation with other senior agents involved in the

11 | investigation.

12 |     This affidavit is submitted in support of a request that a

13 | complaint, arrest warrant and search warrant be issued for the

14 | following persons, addresses and vehicles:

15 |     A.  **Adrian Damian Baldovinos**, DOB: 03-12-1972, CDL:
    B6586238,

16 |       **74 Carrotwood Court, Sacramento, CA**
          **A blue 2001 Ford, CA License 5DJT490,**

17 |       **VIN:1FAFP33P71W229053**

        B.  **Alejandro Ortiz-Salas**, DOB: 12-12-1977

18 |

19 | for violations of Title 21, United States Code, Sections

20 | 841(a)(1) and 846, Possession With Intent to Distribute and

21 | Distribution of Methamphetamine, and Conspiracy to Possess With

22 | the Intent to Distribute Methamphetamine.

23 |              **STATEMENT OF PROBABLE CAUSE:**

24 |     In August of 2004, a Confidential Informant (hereafter to be

25 | referred to as CI-1) provided the Yolo County Narcotics

26 | Enforcement Team (YONET) with intelligence information relative

27 | to the distribution of methamphetamine from Alejandro Ortiz-

28 | Salas.

2

<u>CI-1</u>

2    SA Katie Dorais conducted a criminal history check on CI-1.

3  CI-1 has a lengthy record including felony and misdemeanor

4  convictions for drug trafficking.  CI-1 has not received monetary

5  payments from YONET.  CI-1 has provided information for

6  consideration of a reduction in sentence for current pending

7  criminal drug charges in Yolo County, CA. *Based on my experience and contact with CI-1, I belie he/she is credible.*

8  **August 24, 2004 Purchase of 13.6 grams of Methamphetamine from Alejandro Ortiz-Salas.**

10    On 08-19-04, a YONET CI (CI-1), at the direction of law

11  enforcement placed a recorded telephone call to 916-821-9773

12  (Cellular telephone utilized by SALAS).  The YONET CI (CI-1)

13  discussed future methamphetamine transactions with SALAS.  On 8-

14  23-04, a DEA Administrative Subpoena was faxed to Metro PCS for

15  subscriber information.  On 08-27-04, Metro PCS provided

16  subscriber information that listed Gustavo Lopez, with an address

17  of 1040 Florin Road, Sacramento, CA, as the subscriber to

18  cellular telephone 916-821-9773.

19    On 08-24-04, at approximately 1706 hours YONET Officers met

20  with CI-1 at a predetermined meet location.  At the direction of

21  law enforcement, CI-1 placed a recorded telephone call to 916-

22  821-9773 and spoke with SALAS.  CI-1 arranged to meet SALAS in

23  order to purchase a ½ ounce of methamphetamine for $300.00 in

24  state recorded funds.  SALAS agreed to meet CI-1 in the parking

25  lot of Fry's Electronics, located at 4100 Northgate Blvd.,

26  Sacramento, CA.

27    At approximately 1839 hours, surveillance was established by

28  YONET officers at the Fry's Electronics Store located at 4100

1  Northgate Blvd., Sacramento, CA.  At approximately 1851 hours the

2  CI (CI-1) parked his/her vehicle in front of the aforementioned

3  Fry's Electronics store.

4       At approximately 1947 hours, YONET officers observed SALAS

5  arrive at 4100 Northgate Blvd., Sacramento, CA, alone in a blue

6  2001 Ford Focus with California license plate 5DJT490.  A check

7  through the California Department of Motor Vehicle Records

8  revealed that California License plate 5DJT490 belongs to a 2001

9  Ford, registered owner Adrian Damian Baldovinos at PO Box 1061,

10 Clearlake, CA.  Surveillance observed SALAS exit the driver's

11 side of the 2001 Ford Focus and walked over to CI-1's vehicle.

12 The CI-1 was equipped with a transmitting device.  Surveillance

13 observed SALAS enter the front passenger seat of CI-1's vehicle.

14 Surveillance then observed SALAS exit CI-1's vehicle and depart

15 the area.  YONET CI-1 was taken away to a neutral location to

16 discuss the transaction with SALAS.  CI-1 gave LOPEZ $300 (YONET

17 Funds) for the 13.8 grams of methamphetamine.  CI-1 said SALAS

18 and CI-1 had brief salutations and made the exchange.

19 Surveillance was terminated shortly after the transaction.

20      The package sold from SALAS to CI-1 was field tested and

21 received a positive reaction for methamphetamine.  On 09-10-04,

22 SA Dorais sent the 13.6 grams of methamphetamine to the DEA

23 Western Regional Laboratory for analysis.  Forensic Chemist Jason

24 Otis analyzed the substance and determined it tested positive for

25 d-methamphetamine hydrochloride (HCL), total weight 13.6 grams,

26 amount of pure drug 11.6, and a purity of 86%.

27 ///

28 ///

4

1 **August 31, 2004 Purchase of 55.2 Grams of Methamphetamine From**
**Alejandro Ortiz-Salas Utilizing Undercover Officer Ramos and CI-**
2 **1.**

3     On 08-31-2004, at approximately 1230 hours, the YONET CI-1

4 placed a recorded telephone call to 916-821-9773 and ordered ¼

5 pound of methamphetamine from SALAS.  At approximately 1327 hours

6 DEA and YONET established surveillance at the Ross Dress for Less

7 Store parking lot located at 3701 Truxel Road, Sacramento, CA.

8     At approximately 1333 hours YONET Officer Hancock observed a

9 2001 blue Ford Focus bearing California License plate 5DJT490

10 park in a parking spot facing north near the aforementioned Ross

11 Dress for Less Store.  A check through the California Department

12 of Motor Vehicle Records revealed that California License plate

13 5DJT490 belongs to a 2001 Ford, registered owner Adrian Damian

14 Baldovinos at PO Box 1061, Clearlake, CA.

15     At approximately 1335 hours Officer Hancock observed the

16 undercover (U/C) and CI-1 enter the aforementioned parking lot in

17 CI-1 personal vehicle and park facing north.  At approximately

18 1336 hours YONET Officer Angle observed SALAS exit the

19 aforementioned Ford Focus, walk up to CI-1 vehicle, and lean

20 inside the passenger side window.  (It should be noted that

21 Officer Ramos was seated on the passenger side and CI-1 was

22 driving.)  At approximately 1338 hours YONET Officer Hallenbeck

23 observed SALAS walk away from CI-1's vehicle.  At approximately

24 1339 hours YONET Officer Hallenbeck observed SALAS open the

25 drivers side door of the blue Ford Focus bearing California

26 license plate 5DJT490, enter the vehicle and depart the area.

27 The U/C was debriefed at a neutral location and discussed the

28 transaction with SALAS.  The U/C stated that when SALAS leaned

1  inside the passenger window, he dropped the package containing

2  methamphetamine on the passenger side floor.  The U/C stated that

3  he then gave SALAS $1200.00 DEA funds.  The U/C stated that he

4  (U/C) and SALAS had a brief conversation with SALAS discussing

5  future purchases of methamphetamine and then SALAS departed.

6        At approximately 1345 hours, a traffic stop was conducted by

7  West Sacramento Police Officers Davis and Rodriquez on SALAS near

8  the corner of Norwood Avenue and Grand Avenue in Sacramento, CA.

9  Officer Rodriquez collected a set of fingerprints and information

10 contained on a Mexican Identification Card.  SALAS told Officer

11 Rodriguez that he (SALAS) did not speak English and he (SALAS)

12 did not possess a California driver's license.  The name listed

13 on the Mexican Identification Card was Alejandro Ortiz-Salas,

14 DOB:  12-12-1977.  Surveillance was terminated shortly after the

15 traffic stop.

16       The package sold from SALAS to CI-1 was field tested and

17 received a positive reaction for methamphetamine.  On 09-02-04,

18 SA Dorais sent the 55.2 grams of methamphetamine to the DEA

19 Western Regional Laboratory for analysis.  Forensic Chemist Jason

20 Otis analyzed the substance and determined it tested positive for

21 d-methamphetamine hydrochloride (HCL), total weight 55.2 grams,

22 amount of pure drug 48.0 grams, and a purity of 87%.

23 **October 14, 2004 Purchase of 57.0 Grams of Methamphetamine From
   Alejandro Ortiz-Salas Utilizing Undercover Officer Ramos and CI-**
24 **1.**

25       On 10-14-04, a YONET CI (CI-1), at the direction of law

26 enforcement placed a recorded telephone call to 916-821-9773

27 (Cellular telephone utilized by SALAS).  The YONET CI (CI-1) made

28 arrangements to have a U/C meet with SALAS in order to purchase ¼

1  pound of methamphetamine.

2      On 10-14-2004, at approximately 1453 hours, DEA and YONET

3  established surveillance in the parking lot of the Ross dress for

4  less Store located at 3701 Truxel Road, Sacramento, CA.

5      At approximately 1503 hours the U/C entered the

6  aforementioned parking lot, driving an undercover vehicle, and

7  parked 25 yards from the front door of the Ross Dress for Less

8  Store.

9      At approximately 1525 hours, YONET Officer Updegraff

10 observed SALAS enter the Ross Dress for Less parking lot in a

11 2001 blue Ford Focus bearing California license plate # 5DJT490.

12 A check through the California Department of Motor Vehicle

13 Records revealed that California License plate 5DJT490 belongs to

14 a 2001 Ford, registered owner Adrian Damian Baldovinos at PO Box

15 1061, Clearlake, CA.

16     Officer Updegraff observed SALAS park the aforementioned

17 vehicle, walk westbound through the parking lot and enter the

18 Michaels store located next door the Ross Dress for Less Store.

19     At approximately 1529 hours, surveillance observed SALAS

20 inside the Michaels store walking and talking on his (SALAS)

21 cellular telephone.  At approximately 1531 hours, CI-1 called

22 YONET Officer Hancock.  CI-1 told Officer Hancock that she/he

23 just had a conversation with SALAS.  CI-1 told Officer Hancock

24 that she/he spoke with SALAS and SALAS told CI-1 that he (SALAS)

25 saw the U/C sitting in the parking lot and would not meet with

26 the U/C until CI-1 was present.

27     At approximately 1549 hours, DEA SA Katie Dorais, YONET

28 Officer Hancock, the U/C, and CI-1 met at a predetermined meet

                                  7

1 location.  Surveillance remained in the Ross Dress for Less
2 parking lot observing SALAS.

3     At approximately 1556 hours, the U/C and CI-1 arrived in the
4 Ross Dress for Less parking lot.  At approximately 1559 hours,
5 YONET Officer Hallenbeck observed SALAS exit the Michael's store
6 carrying a shopping bag and walk up to the passenger side window
7 of the U/C's vehicle.  SALAS and the U/C had a conversation in
8 Spanish regarding future methamphetamine transactions.  SALAS
9 reached inside the passenger side window of the U/C's vehicle and
10 gave CI-1 a clear plastic bag containing approximately two ounces
11 of methamphetamine.  SALAS stated to the U/C that he (SALAS) was
12 leery the first time he (SALAS) met the U/C because he (SALAS)
13 did not know who the U/C was and when he (SALAS) left he started
14 seeing cars.  (Possibly referring to surveillance vehicles on 08-
15 31-04)  SALAS stated that he (SALAS) thought he (SALAS) was being
16 followed by police.  SALAS stated that he (SALAS) was conducting
17 counter surveillance.  The U/C told SALAS that he (U/C) would
18 like to get a hold of SALAS without going through CI-1.  SALAS
19 then told the U/C to program 916-821-9773 into his (U/C's)
20 telephone.  The U/C then gave SALAS $1200.00 in DEA funds.

21     At approximately 1606 hours YONET Officer Eastman observed
22 SALAS walk away from the U/C's vehicle, enter the aforementioned
23 blue Ford Focus and depart the area.  A few moments later
24 surveillance was terminated.

25     The package sold from SALAS to the U/C was field tested and
26 received a positive reaction for methamphetamine.  On 10-15-04,
27 SA Dorais sent the 57.0 grams of methamphetamine to the DEA
28 Western Regional Laboratory for analysis.  Forensic Chemist Jason

8

1 Otis analyzed the substance and determined it tested positive for

2 d-methamphetamine hydrochloride (HCL), total weight 57.0 grams,

3 amount of pure drug 50.1 grams, and a purity of 88%.

4 **November 3, 2004 Recorded Telephone Conversation Between**

**Undercover Officer Gabe Ramos and Adrian Damian-Baldovinos.**

5

6      On 11-03-04, YONET Undercover Officer Gabe Ramos, acting in

7 an undercover capacity placed a recorded telephone call to 916-

8 821-9773 (Cellular telephone utilized by SALAS).  The U/C asked

9 for "Huero" ("Huero" is the nickname for SALAS and Baldovinos).

10 The Hispanic male answered "Yes."  The U/C again said "Huero?,"

11 and the Hispanic male replied again, "Yes, its "Huero."  The U/C  

12 stated "It's Chango."  The U/C told "Huero" that the Chicken soup

13 came out good (Chicken referring to the two ounce of

14 methamphetamine purchased on 10-14-04).  The U/C asked if Huero

15 wanted to meet over dinner to discuss future methamphetamine

16 transactions.  Baldovinos replied yes, ah Chango, my brother

17 SALAS is gone, he went down south, but he told me about you and

18 said you were supposed to be calling me, I'm his brother.  The

19 U/C asked Baldovinos, what his name was.  Baldovinos replied by

20 saying "call me Huero."  Baldovinos agreed to meet the U/C at Las

21 Islitas, a Mexican seafood restaurant located on the southwest

22 corner of Florin Road and 24th in Sacramento, CA.

23 **November 8, 2004 Meeting Between Undercover Officer Gabe Ramos**

**and Adrian Damian-Baldovinos.**

24

25      On 11-08-04, at approximately 1225 hours, Undercover Officer

26 Gabe Ramos placed a recorded telephone call to cellular telephone

27 916-821-9773 and received a voice mail message.  At approximately

28 1358 hours Undercover Officer Gabe Ramos was contacted by Adrian

9

1  Damian-BALDOVINOS.  Adrian Damian-BALDOVINOS told Undercover

2  Officer Ramos to call him (BALDOVINOS) at 1730 hours to discuss

3  meeting later.  At approximately 1720, Undercover Officer Ramos

4  placed a telephone call to BALDOVINOS at 916-821-9773.

5  Undercover Officer Ramos arranged to meet BALDOVINOS at 7240 24th

6  Street (Las Islitas Restaurant) at 1800 hours.

7      At approximately 1805 hours Officers from BNE and YONET

8  established surveillance at 7240 24th Street, Sacramento, CA.  At

9  approximately 1808 hours, surveillance observed Ramos arrive in

10  the parking lot of 7240 24th Street.  At approximately 1815 hours

11  BALDOVINOS arrived at 7240 24th Street alone driving a blue 2001

12  Ford Focus bearing California License plate 5DJT490.  A check

13  through the California Department of Motor Vehicle Records

14  revealed that California License plate 5DJT490 belongs to a 2001

15  Ford, registered owner Adrian Damian Baldovinos at PO Box 1061,

16  Clearlake, CA.  Surveillance observed BALDOVINOS to be driving

17  the same 2001 Ford Focus that SALAS had driven to the previous

18  meets on August 24, 31 and October 14, 2004.

19      A few minutes later, Undercover Officer Ramos exited his

20  (Ramos's) vehicle and greeted BALDOVINOS outside the restaurant.

21  Surveillance observed BALDOVINOS and the U/C enter the restaurant

22  together.

23      At approximately 1855, BNE Agent Hatano observed U/C Ramos

24  and BALDOVINOS exit the restaurant and shake hands.  Agent Hatano

25  observed Agent Ramos walk to his U/C vehicle, enter the vehicle

26  and depart the area.  Surveillance observed BALDOVINOS walk to

27  the 2001 Ford Focus, enter the vehicle and depart the area.

28  Agents and Officers attempted to conduct surveillance on

1  BALDOVINOS, but were unable to due to various counter

2  surveillance tactics utilized by BALDOVINOS.

3       At approximately 1900 hours, Officer Hancock debriefed

4  Undercover Officer Ramos.  Undercover Officer Ramos told Officer

5  Hancock that he (U/C Ramos) discussed purchasing a pound of

6  Methamphetamine in a week or two (Mid November).  Undercover

7  Officer Ramos referred to the Methamphetamine as "chicken Soup."

8  Undercover Officer Ramos asked BALDOVINOS if SALAS was in Mexico.

9  BALDOVINOS told undercover Officer Ramos that his (BALDOVINOS)

10  brother (SALAS) would return in two weeks.  BALDOVINOS did not

11  tell Undercover Officer Ramos where his (BALDOVINOS) brother

12  (SALAS) was.  BALDOVINOS offered undercover officer Ramos a one

13  ounce sample of methamphetamine.  Undercover Officer Ramos asked

14  BALDOVINOS if the methamphetamine was the same as "stuff"

15  (methamphetamine) he (U/C Ramos) bought earlier from his

16  (BALDOVINOS) brother (SALAS).  BALDOVINOS stated that "it"

17  (methamphetamine) was the same.  Undercover Officer Ramos stated

18  that he (Ramos) was more interested in buying weight (a large

19  quantity of methamphetamine).  Undercover Officer Ramos finished

20  dinner with BALDOVINOS, and they departed the restaurant

21  together.

22  YONET Officer Hancock showed undercover officer Ramos a

23  California Department of Motor Vehicle photograph of Adrian

24  Damian BALDOVINOS after to the aforementioned meeting on November

25  8, 2004. Undercover Officer Ramos positively identified Adrian

26  Damian BALDOVINOS as the male he met at "Las Islitas" restaurant

27  on November 8, 2004.  During the meet with BALDOVINOS, BALDOVINOS

28  gave U/C Ramos an additional telephone number of 916-266-3655, to

11

1  contact him (BALDOVINOS).  On December 2, 2004, a DEA

2  Administrative Subpoena was faxed to T-Mobile for subscriber

3  information.  On 12-02-04, T-Mobile provided subscriber

4  information that listed Adrian Damian, with an address of 4330

5  Norwood Avenue, Sacramento, CA, as the subscriber to cellular

6  telephone 916-266-3655.

7  **December 9, 2004 Purchase of 108.6 Grams of Methamphetamine From**
   **Adrian Damian BALDOVINOS Utilizing Undercover Officer Ramos.**

8

9       On December 6, 2004, at approximately 1441 hours Undercover

10 Officer Ramos placed a telephone call to 916-821-9773, (Cellular

11 telephone utilized by BALDOVINOS and SALAS),to arrange a meet and

12 purchase of ¼ pound of methamphetamine.  An unknown male answered

13 the telephone and told U/C Ramos to call BALDOVINOS on his other

14 telephone number.  U/C Ramos told the unknown male voice, in

15 Spanish, that he did not have BALDOVINOS'S new number.  The

16 unknown male voice told U/C Ramos that he would have BALDOVINOS

17 call him (U/C Ramos) right back.

18       At approximately 1444 hours, U/C Ramos received a telephone

19 call from BALDOVINOS.  U/C Ramos told BALDOVINOS he (U/C Ramos)

20 wanted to buy a ¼ pound of methamphetamine on Thursday (12/09/04)

21 and wanted to meet in West Sacramento, CA.  BALDOVINOS said he

22 (BALDOVINOS) could sell U/C Ramos the 1¼ pound of

23 methamphetamine, but he (BALDOVINOS) did not like to meet in West

24 Sacramento, CA.  BALDOVINOS told U/C Ramos to give him

25 (BALDOVINOS) a call when he (U/C Ramos) was ready.

26       On December 8, 2004, at approximately 1651 hours, U/C Ramos

27 made another telephone call to BALDOVINOS by dialing 916-821-9773

28 to confirm a meeting location and the purchase of ¼ pound of

1  methamphetamine.  BALDOVINOS told U/C Ramos to call when he (U/C

2  Ramos) was ready.

3      On December 9, 2004, at approximately 1233 hours, agent

4  Ramos called BALDOVINOS by dialing 916-821-9773.  U/C Ramos told

5  BALDOVINOS to meet him (U/C Ramos) in the parking lot of Fry's

6  Electronics store located at 4100 Northgate Boulevard,

7  Sacramento, CA.

8      At approximately 1245 hours, DEA and YONET established

9  surveillance at the Fry's Electronics store located at 4100

10  Northgate Boulevard, Sacramento, CA.

11      At approximately 1257 hours, U/C Ramos arrived in the

12  parking lot of Fry's Electronics and parked near the south end of

13  the parking lot in front of the store.  At approximately 1303

14  hours, U/C Ramos received a telephone call from BALDOVINOS.  U/C

15  Ramos stated that BALDOVINOS asked if U/C Ramos could get in his

16  car (U/C ~~Ramos'~~ BALDOVINOS's car) and go for a ride when BALDOVINOS arrived

17  in order to do the transaction.  U/C Ramos told BALDOVINOS his

18  girlfriend was in Fry' Electronics Store and he (U/C Ramos) could

19  not leave her.  U/C Ramos stated that BALDOVINOS was on his way

20  and would arrive at the Fry's Electronic Store Shortly.

21      At approximately 1307 hours, surveillance observed a blue

22  2001 Ford Focus bearing California license plate 5DJT490, enter

23  the Fry's Electronics Store parking lot.  A check through the

24  California Department of Motor Vehicle Records revealed that

25  California License plate 5DJT490 belongs to a 2001 Ford,

26  registered owner Adrian Damian BALDOVINOS at PO Box 1061,

27  Clearlake, CA.  U/C Ramos observed two occupants in the

28  aforementioned vehicle.  U/C Ramos was unable to identify the

13

1  second occupant of the aforementioned vehicle.   Surveillance

2  observed BALDOVINOS exit the Ford Focus, walk to the passenger

3  side of U/C Ramos's U/C vehicle and sit in the front passenger

4  side seat with the door open.

5       At approximately 1310 hours, surveillance observed

6  BALDOVINOS exit U/C Ramos's vehicle, return to the front

7  passenger seat of the 2001 ford Focus and depart the area.

8       DEA and YONET continued surveillance on BALDOVINOS and the

9  unknown male.   At approximately 1324 hours, surveillance observed

10  BALDOVINOS and the unknown male enter "Lai Wah" Chinese

11  Restaurant located on 38th Avenue and Freeport Boulevard.   At

12  approximately 1359 hours surveillance observed BALDOVINOS and the

13  unknown male pay the bill, exit the restaurant, enter the 2001

14  Ford Focus and depart the area.

15       At approximately 1416 hours, surveillance observed

16  BALDOVINOS park the 2001 Ford Focus in the driveway of the fourth

17  house on the north side of Carrotwood Court, Sacramento, CA.   At

18  approximately 1432 hours surveillance observed BALDOVINOS exit 74

19  Carrotwood court and depart in the 2001 Ford Focus.   At  *(The same house that BALDOVINOS entered)* KD 

20  approximately 1500 hours, surveillance observed BALDOVINOS park

21  on the street in front of a residence located at 3355 Swaim

22  Court.   At approximately 1513 hours, surveillance observed white

23  female adult and BALDOVINOS exit the residence and depart in a

24  gold colored vehicle.   At 1523 hours surveillance observed the

25  gold colored vehicle park in front of Natomas Liquor and Deli

26  located at 3291 Truxel Road.   Surveillance observed the white

27  unknown female exit the vehicle, but was unable to tell what

28  store she entered.   Surveillance observed BALDOVINOS remain in

1 the gold colored vehicle.  At 1547 hours surveillance observed

2 the vehicle depart and return to 3355 Swaim Court, Sacramento,

3 CA.  Surveillance observed BALDOVINOS exit the gold colored

4 vehicle, enter the 2001 Ford Focus and depart the area.

5     At approximately 1623 hours surveillance observed BALDOVINOS

6 park the 2001 Ford Focus in the driveway of 74 Carrotwood Court,

7 Sacramento, CA.  YONET Commander Roy Giorgi observed BALDOVINOS

8 enter the residence and did not observe anyone in the doorway as

9 BALDOVINOS was closing the door to 74 Carrotwood Court,

10 Sacramento, CA.

11     Officer Hancock debriefed U/C Ramos about the aforementioned

12 transaction.  After BALDOVINOS entered U/C Ramos's U/C vehicle,

13 BALDOVINOS asked U/C Ramos if he (U/C Ramos) had the money.  U/C

14 Ramos put the money in a compact disc case and slid the compact

15 disc case across the seat to BALDOVINOS.  U/C Ramos told

16 BALDOVINOS that the money was all there, and BALDOVINOS showed

17 U/C Ramos the methamphetamine, which was contained within a zip

18 lock bag.  BALDOVINOS placed the plastic zip lock bag containing

19 the methamphetamine inside the same compact disc case and slid

20 the compact disc case back to U/C Ramos.  BALDOVINOS told U/C

21 Ramos that he (BALDOVINOS) would sell U/C Ramos a ¼ pound of

22 methamphetamine for $2000.00 instead of $2200.00 in order for U/C

23 Ramos to sell "it" faster.  U/C Ramos told BALDOVINOS that he

24 (U/C Ramos) would like to purchase a ½ pound of methamphetamine

25 sometime in January.  BALDOVINOS exited the vehicle after

26 acknowledging that U/C Ramos would be out of town until January

27 due to the holidays.

28     The package sold from BALDOVINOS to the U/C was field tested

15

1  and received a positive reaction for methamphetamine.  On 12-10-

2  04, SA Dorais sent the 108.6 grams of methamphetamine to the DEA

3  Western Regional Laboratory for analysis.  Forensic Chemist Jason

4  Otis analyzed the substance and determined it tested positive for

5  d-methamphetamine hydrochloride (HCL), total weight 108.6 grams,

6  amount of pure drug 99.9 grams, and a purity of 92%.

7  **February 1, 2005 Purchase of 190.7 Gross Grams of Methamphetamine**
**From Adrian Damian BALDOVINOS Utilizing Undercover Officer Ramos.**

8

9  On February 1, 2005 at 1411 hours, YONET Undercover Officer

10 Gabe Ramos, acting in an undercover capacity placed a recorded

11 telephone call to 916-821-9773 (Cellular telephone utilized by

12 (with whom the U/C identifys as Baldovinos)

12 SALAS).  U/C Ramos discussed meeting later in the day in order

13 for the U/C to purchase a ¼ pound of methamphetamine.

14 On February 1, 2005 at 1435 hours DEA and YONET established

15 surveillance in the Fry's Electronics store parking lot located

16 at 4100 Northgate Boulevard, Sacramento, CA.  At approximately

17 1504 hours, U/C Ramos entered the lot and parked on the west end

18 of the parking lot.  At approximately 1519 hours, YONET Officer

19 Hallenbeck observed a blue 2001 Ford Focus bearing California

20 license plate 5DJT490, enter the Fry's Electronics Store parking

21 lot.  A check through the California Department of Motor Vehicle

22 Records revealed that California License plate 5DJT490 belongs to

23 a 2001 Ford, registered owner Adrian Damian BALDOVINOS at PO Box

24 1061, Clearlake, CA.

25 At approximately 1520 hours, YONET Officer Hallenbeck

26 observed Adrian Damian Baldovinos exit the aforementioned 2001

27 Ford Focus and approach the passenger side of U/C Ramos's U/C

28 vehicle.  YONET Officer Hallenbeck observed BALDOVINOS open the

16

1  passenger door of the U/C vehicle and sit down in the passenger

2  seat.  At approximately 1526 hours, YONET Officer Hallenbeck

3  observed BALDOVINOS exit the U/C vehicle, enter the driver's side

4  of the aforementioned 2001 Ford Focus, and depart the area.

5       At approximately 1550, DEA SA Alicia Ramirez observed

6  BALDOVINOS enter a Vietnamese restaurant named Pho Tau Bay

7  located at 5968 Stockton Boulevard, Sacramento, CA.  At

8  approximately 1625, SA Ramirez observed BALDOVINOS exit the

9  aforementioned restaurant, enter the 2001 Ford Focus and depart

10 the area.  At approximately 1630 hours, SA Dorais observed

11 BALDOVINOS enter a United States Postal Service Office located on

12 the corner of Lemon Hill Road and 44th Avenue.  At approximately

13 1633 hours, YONET Officer Michelle Force observed BALDOVINOS exit

14 the aforementioned Post Office carrying mail and depart the area.

15 At approximately 1648 hours, YONET Officer Hancock observed

16 BALDOVINOS park his vehicle on the street in front of a residence

17 located at 7512 Collingwood Street, Sacramento, CA.  YONET

18 Officer Hancock observed BALDOVINOS enter the residence through

19 the front door.

20      The package sold from BALDOVINOS to the U/C was field tested

21 and received a positive reaction for methamphetamine.  On 02-03-

22 05, SA Dorais sent the 190.7 gross grams of methamphetamine to

23 the DEA Western Regional Laboratory for analysis.  Forensic

24 Chemist Jason Otis analyzed the substance and determined it

25 tested positive for d-methamphetamine hydrochloride (HCL), total

26 weight 112 grams, amount of pure drug 104 grams, and a purity of

27 93%.

28      ///

17

1     On March 22, 2005, YONET Officer William Hancock contacted
2  City of Sacramento Police Officer R. Abe (badge # 0604), and
3  asked Officer Abe to contact any residents at 74 Carrotwood
4  Court, Sacramento, CA.  YONET Officer Hancock asked Officer Abe
5  to tell the residents he (Officer Abe) was responding to a 911
6  emergency dispatch call.  On March 22, 2005, at 9:00AM, Officer
7  Abe knocked on the front door of 74 Carrotwood Court, Sacramento,
8  CA.  A Hispanic male answered the front door.  Officer Abe asked
9  the Hispanic male his name, date of birth, telephone number and
10 number of occupants living at 74 Carrotwood Court.  The Hispanic
11 male said his name was Julio Chavez, date of birth was 08-27-
12 1972, telephone Number (916) 392-5137 and that he (Julio Chavez)
13 and his cousin live at 74 Carrotwood Court, Sacramento, CA.
14 After Officer Abe made contact and departed the aforementioned
15 residence, YONET Officer Hancock showed a California DMV
16 photograph of Adrian Damian BALDOVINOS.  Officer Abe positively
17 identified Julio Chavez as Adrian Damian BALDOVINOS.

18                      **CRIMINAL HISTORIES**
19 **Alejandro Ortiz-Salas:**
20    SA Dorais was unable to identify a criminal history for
21 Alejandro Ortiz-Salas.
22 **Adrian Damian-Baldovinos:**
23     SA Dorais was unable to identify a criminal history for
24 Adrian Damian-Baldovinos.

25                     **LOCATION INFORMATION**
26 **74 Carrotwood Court, Sacramento, CA (Residence of BALDOVINOS):**
27 -Location where BALDOVINOS arrived after meeting with U/C Ramos
28 and selling U/C Ramos a ¼ pound of methamphetamine on 12-09-2004.

                              18

1  -Location where the 2001 Ford Focus was seen during surveillance

2  by YONET Officer Angle on 01-31-2005.

3  **VEHICLE INFORMATION**

4  **A blue 2001 Ford Focus, CA License 5DJT490:**

5     -Vehicle was utilized by SALAS on 08-24-2004 to deliver

6  approximately 13.6 grams of methamphetamine to CS-1.

7     -Vehicle was utilized by SALAS on 08-31-2004 to deliver

8  approximately 55.2 grams of methamphetamine to CS-1 and U/C

9  Ramos.

10    -Vehicle was utilized by SALAS on 10-14-2004 to deliver

11 approximately 57.0 grams of methamphetamine to CS-1 and U/C

12 Ramos.

13    -Vehicle was utilized by BALDOVINOS on 11-08-2004 to meet

14 U/C Ramos at "Las Islitas" for dinner.

15    -Vehicle was utilized by BALDOVINOS on 12-09-2004 to deliver

16 approximately 108.6 grams of methamphetamine to U/C Ramos.

17    -Vehicle utilized by BALDOVINOS on 02-01-2005 to deliver

18 approximately ¼ pound of methamphetamine to U/C Ramos.

19  **What I Expect to Find**

20    Based on my knowledge gained from my training and

21 experience, I know that people involved in the distribution of

22 controlled substances often utilize their residences,

23 outbuildings, secondary residences, businesses, their vehicles

24 and the vehicles of others to store and distribute controlled

25 substances and drug distribution paraphernalia (scales, cutting

26 material, plastic baggies, etc.).  They also often maintain

27 records relating to their trafficking activities in these same

28 places.  These records can be in written form, or can be stored

19

1 in computers. Narcotic traffickers also often keep stored

2 messages and telephone numbers relating to their trafficking

3 activities within electronic pagers, beepers, and cellular

4 telephones.

5     Drug traffickers often maintain on-hand large amounts of

6 U.S. Currency which constitute money received from narcotics

7 transactions and/or constitute money used to maintain or finance

8 their ongoing narcotic business. They often also keep on-hand

9 firearms to protect their persons, drugs, and money.

10     Persons involved in narcotic trafficking often acquire

11 personal and real property with their narcotic proceeds, and

12 maintain evidence of financial transactions related to obtaining,

13 transferring, secreting, or the spending of large sums of money

14 made from narcotic trafficking activities.

15     I know that people involved in the distribution of drugs

16 will store items, further described in Attachment B and B-1,

17 which are incorporated herein by reference, and that those items

18 are used by narcotic traffickers in furtherance of their narcotic

19 trafficking, or are obtained by narcotic traffickers as a result

20 of their narcotic trafficking.

21                     **CONCLUSION**

22     Based on the above mentioned information, and my training

23 and experience, I believe that there is probable cause to

24 believe that the items contained within Attachment B will be

25 located in the location described in Attachment A. I also

26 believe that there is probable cause to believe that the items

27 contained within Attachment B-1 will be located in the vehicle

28 described in Attachments A-1.

1       There is probable cause to believe that Alejandro Ortiz-

2   SALAS and Adrian Damian-BALDOVINOS are involved in the

3   Distribution of Methamphetamine and a Conspiracy to Distribute

4   Methamphetamine in violation of Title 21, United States Code,

5   Sections 841(A)(1) and 846.

6       I declare under the penalty of perjury that the foregoing is

7   true and correct to the best of my knowledge and belief.

8   Dated: March 23, 2005

9

10

11                                            Katie A. Dorais

12                                            Special Agent, DEA

13   Subscribed and sworn to before me

14   this 23rd day of March, 2005.

15

16

17   HONORABLE KIMBERLY J. MUELLER
    UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

1
**Attachment A**

2

3
**74 Carrotwood Court, Sacramento, CA:**

4
   A single family residence.  The front door faces south.  The

5
house is grey in color with dark grey trim.  The numbers "74"

6
appear in black on the front of the house near the garage door.

7
The residence consists of wood with light brown shingles on the

8
roof.  The residence has a two car garage.  The garage is

9
attached and is just the left side of the main residence.  The

10
residence does not have a security door or bars on the windows.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

1

**ATTACHMENT A-1**

2   -   A blue 2001 Ford Focus, California License 5DJT490,

3   registered to Adrian Damian BALDOVINOS, PO Box 1061,

4   Clearlake, CA, VIN: 1FAFP33P71W229053.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

**ATTACHMENT B**

1.   Controlled substances, specifically methamphetamine,

2.   Drug distribution paraphernalia including, but not
limited to: scales, cutting material, plastic baggies,

3.   Devices used to communicate with other drug traffickers
including cellular telephone and pagers, electronic equipment
used for counter-surveillance such as scanners, surveillance
cameras, monitors, and anti-bugging devices,

3.   Paperwork associated with drug trafficking including
pay-owe sheets, buyer lists, seller lists, ledgers, records of
sales, records of expenditures made to purchase drugs, buyer
lists, telephone lists, address books (written or electronic),

4.   Large amounts of currency (exceeding $1,000) or readily
transported assets which are used as cash equivalents (cashiers'
checks, bearer bonds, gold, diamonds, precious jewels, etc.)
which are believed to have a value exceeding $1,000.

5.   Materials evidencing the receipt of large amounts of
cash including bank statements and related records, passbooks,
money drafts, cashiers checks, bank checks, checkbooks, tax
returns, loan statements, tax return work papers, escrow files,
Forms 1099, wire transfer records, and other items evidencing the
obtaining, secreting, transfer, concealment expenditure of money
related to drug trafficking activities,

6.   Materials evidencing the purchase of large assets with
cash including, records of real estate or securities
transactions, automobiles or trucks purchased with cash or cash
equivalents,

7.   Photographs, negatives, video tapes, films, undeveloped

1  film and slides depicting the subjects of the investigation and

2  their criminal associates (showing association with the

3  associates), their assets and/or controlled dangerous substances,

4      8.  Personal calendars, address and/or telephone books,

5  Rolodex indices and papers reflecting names, addresses, telephone

6  numbers, pager numbers, fax numbers and/or telex numbers,

7  correspondences,

8      9.  Firearms or ammunition of any type,

9      10.  Indicia of possession of the place to be searched:

10  consisting of articles of personal property, such as personal

11  identification, personal correspondence, delivery pouches,

12  diaries, checkbooks, notes, photographs, keys, utility bills,

13  receipts, personal telephone and address books, video tapes,

14  tending to establish the identity of the person or persons in

15  control of the areas to be searched.

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT B-1**

1.  Controlled substances, specifically methamphetamine,

2.  Drug distribution paraphernalia including, but not limited to: scales, cutting material, plastic baggies,

3.  Devices used to communicate with other drug traffickers including cellular telephone and pagers, electronic equipment used for counter-surveillance such as scanners, surveillance cameras, monitors, and anti-bugging devices,

3.  Paperwork associated with drug trafficking including pay-owe sheets, buyer lists, seller lists, ledgers, records of sales, records of expenditures made to purchase drugs, buyer lists, telephone lists, address books (written or electronic),

4.  Large amounts of currency (exceeding $1,000) or readily transported assets which are used as cash equivalents (cashiers' checks, bearer bonds, gold, diamonds, precious jewels, etc.) which are believed to have a value exceeding $1,000.

5.  Firearms or ammunition of any type,

6.  Indicia of possession of the place to be searched: consisting of articles of personal property, such as personal identification, personal correspondence, delivery pouches, diaries, checkbooks, notes, photographs, keys, utility bills, receipts, personal telephone and address books.